CHARLOTTE F. SMITH *vs.* EQUITABLE CO-OPERATIVE BANK.

Essex.    November 4, 1914. — November 25, 1914.

Present: RUGG, C. J., HAMMOND, SHELDON, DE COURCY, & CROSBY, JJ.

*Infant*, Avoidance of contract.   *Contract*, Rescission.   *Co-operative Bank.*

Where a minor, whose mother died intestate, made during a period of thirteen months and until an administrator of his mother's estate was appointed monthly payments to a co-operative bank of amounts of money that were due to the bank from his mother's estate, and where it was found, on evidence warranting such findings, that the minor in making the payments acted, not as the agent of his mother's estate, but for himself alone, that he made the payments out of his own money, that they were not beneficial to him, and that they were not made as loans to his mother's estate, it was *held*, that he had a right to avoid the transactions, even without putting the bank *in statu quo*, and could recover the amount of the payments from the bank in an action of contract.

CONTRACT by a minor, by her next friend, for $347.59, upon an account annexed, which set forth fourteen payments made to the defendant as a co-operative bank by the plaintiff between January 3, 1912, and January 1, 1913, inclusive.   Writ in the District Court of Southern Essex dated February 7, 1914.

On appeal to the Superior Court the case was tried before *Hamilton*, J., without a jury.   The following facts appeared in evidence:

The plaintiff was born on February 27, 1893.   The plaintiff's mother owned a house in Lynn and the land on which it stood. In October, 1911, she mortgaged the house and lot to the defendant for $2,100.   The defendant issued to her eleven shares of its stock, which she pledged to the defendant to secure the mortgage.   Eleven dollars a month was to be paid the bank on the shares and $9.63 a month as interest, making $20.63 payable monthly.   The mother had a bank book on which the eleven shares were carried and on which the monthly payments of $20.63 were credited.   Besides these shares the mother held five unpledged shares in the defendant on which $5 a month was payable to the defendant.   These shares were carried on another book and the depositor or shareholder could withdraw at any time the money paid on the unpledged shares.

On December 26, 1911, the plaintiff's mother died intestate. The plaintiff then was seventeen years and ten months of age. After her mother's death and before the appointment of an administrator, the plaintiff, using her own money, kept up the payments to the bank on both the pledged and the unpledged shares, paying a total of $347.59. No administrator was appointed until January, 1913, after which no payments were made to the defendant. The defendant paid over to the administrator the money that had been deposited on the unpledged shares. In January, 1914, the defendant foreclosed the mortgage, after declaring forfeited the eleven pledged shares and applying the sums paid on them toward the payment of the mortgage debt. The property was sold on foreclosure for $2,060. After paying the amount remaining due on the mortgage, the interest and the foreclosure expenses, there remained $11.93, which the bank paid to the administrator.

The plaintiff after her mother's death lived in the house until the foreclosure, taking lodgers and boarders. At first she did a fair business, but after May, 1912, did not make expenses. Her younger brother lived with her. Her father ceased to live there and did not support them. In making payments to the defendant after her mother's death, the plaintiff would go to the bank with her mother's two books on the first Wednesday of each month and present them with the money either to the defendant's treasurer or to one of its clerks, who would take the money, credit the payments on the books and hand them back to her. She said nothing about her mother's death until June, 1912, when she talked about it to the defendant's treasurer and asked him whether she would be responsible for the payments. He replied that she had better continue them until an administrator was appointed.

At the close of the evidence the defendant asked the judge to make the following rulings, which were disposed of by the judge as follows:

"1. That the plaintiff could legally act as the agent of the estate of the mortgagor."

The judge refused to make this ruling, and said, "I find that the plaintiff did not so act but acted for herself."

"2. That, where payments were made by the plaintiff as agent for the mortgagor and such payments were continued without

notice on the part of the defendant, the defendant had the right to assume that the same relationship continued and said payments were valid."

The judge refused to make this ruling, and said, "The defendant's treasurer who had charge of its business did not testify and there was no evidence that he did not know of the death of the mortgagor and that the plaintiff was making the payments from her own money."

"3. That, as to the payments on the pledged shares, the minor having a beneficial interest in the estate, said payments were beneficial to her and there can be no recovery."

The judge refused to make this ruling, and said, "I find that these payments were not beneficial to the plaintiff."

"4. That the payments made by the plaintiff without the knowledge of her ownership of the money or claim thereon must be construed to be a loan by her to the estate for the benefit of which the payments were made and liability, if any, exists against the estate and not against this defendant."

The judge refused to make this ruling, and said, "I find that the payments were not made by way of loan as indicated by this request."

The defendant also asked the judge to make the following rulings:

"5. That, the plaintiff being informed of all of the facts, any mistake was a mistake at law and there can be no recovery.

"6. That the act of the defendant in receiving the money and crediting it to the account of the owner of the shares was an act of agency and there can be no recovery.

"7. That the payment by the plaintiff was an implied instruction by the plaintiff to credit the amount so paid to the owner of the shares and on such credit being given the transaction is complete and there can be no recovery.

"8. That, the defendant having paid out the money paid and credited to the owner of the shares in the ordinary course of business and without knowledge of any claim of the plaintiff, the plaintiff cannot recover.

"9. That, the money paid by the plaintiff having been derived from carrying on the business of the owner of the shares, said money belonged to the estate of the deceased and said

payments were payments by said estate and there can be no recovery.

"10.    That the plaintiff in taking the property and business of the owner of the shares became an administrator *de son tort* and is not entitled to the income from said business, that said income belongs to the estate and payments therefrom are valid payments credited to the estate and there can be no recovery.

"11.    That on all of the evidence the plaintiff is not entitled to recover."

The judge refused to make any of these rulings, and found for the plaintiff in the sum of $354.54. The defendant alleged exceptions.

*A. B. Tolman,* for the defendant.

*H. D. Linscott,* for the plaintiff.

HAMMOND, J.    The judge before whom without a jury the case was tried found that in making the payments in question the plaintiff acted, not as the agent of her mother's estate, but for herself alone; that the payments were made from her own money; that they were not beneficial to her, and that they were not made by way of a loan to her mother's estate. All of these findings were warranted by the evidence. The plaintiff, being a minor at the time the payments were made, had the right to rescind the transactions even without putting the defendant *in statu quo.* *Simpson* v. *Prudential Ins Co.* 184 Mass. 348, and cases cited. It follows that the first ten rulings requested were properly refused.

It is urged by the defendant that the practical effect of a decision that an institution like the defendant, having thousands of depositors, "takes payments from the hands of a minor at its peril," would be serious. The obvious answer to this is that if the defendant cannot safely do business under the general rules of law, it should close its business, and not that the law should be changed to meet its methods. The eleventh ruling requested was rightly refused.

*Exceptions overruled.*